

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR L. REYNOLDS, | ) |
| | ) 06 C 4666 |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Hon. Charles R. Norgle |
| DAVE REDNOUR, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Petitioner Victor L. Reynolds' ("Reynolds") Amended Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254. Reynolds challenges his conviction and sentence for first-degree murder. For the following reasons, the Petition is denied.

## I. BACKGROUND

**A. Facts**

Reynolds is currently incarcerated at the Menard Correctional Center in Menard, Illinois, where he is serving a 56 year term of imprisonment. He is in the custody of Respondent Dave Rednour, the warden of that facility.

At Reynolds' and codefendant Michael Brent's ("Brent") simultaneous jury trials in the Circuit Court of Cook County, witnesses testified to the following chain of events. On the night of November 3, 1998, the victim Carlos Sanchez ("Sanchez"), Juan Del Valle ("Del Valle"), and Del Valle's uncle stole a Chevrolet Blazer and went joyriding. People v. Reynolds, 00-

3478, slip op. at 2 (Ill. App. Ct. May 2, 2003). Sanchez drove the Blazer through the intersection of LeMoyne Street and Washtenaw Avenue in Chicago and struck the rear of another vehicle. Id. Reynolds was the driver of that vehicle, which his mother owned; Brent was a passenger. Id. After the collision, Sanchez drove away with Reynolds' vehicle in pursuit. Id. Upon initiating pursuit of the Blazer, Reynolds indicated to Brent that he was angry because whoever struck his mother's vehicle failed to stop after the collision, and explained that if he caught the individuals in the Blazer he would "beat their ass." Id. at 7.

After an approximate 15-20 minute chase, Reynolds and Brent found the Blazer parked on the side of a street and observed three men running away from the Blazer through a park. Id. One of the men pretended to have a gun, but Brent testified that Reynolds was aware that this individual was unarmed. Id. at 8. Reynolds and Brent exited their vehicle carrying a "Club"[1] and a baseball bat respectively. Id. Reynolds' and Brent's intention was to find the men and "kick their ass." Id. During their search, Reynolds and Brent flagged down a Chicago police officer and explained to the officer that someone struck Reynolds' vehicle and drove away. Id. at 4-5. The officer instructed Reynolds to proceed to a police station and file an accident report. Id. Instead, Reynolds and Brent continued their search for the individuals who had been in the Blazer. Id. at 8. They eventually found Sanchez hiding behind a house on West Maypole Avenue in Chicago. Id.

Brent punched Sanchez in the mouth and shoved him over a fence. Id. Sanchez got up and attempted to flee, but Reynolds struck him with the Club, knocking him to the ground. Id.

---

[1] The "Club" is a metal steering-wheel lock intended for use as an automobile anti-theft device.

2

Reynolds then struck Sanchez again with the Club. Id. Reynolds and Brent left Sanchez on the ground and walked away, but quickly decided to return to Sanchez, who was struggling to stand. Id. Reynolds then struck Sanchez with the Club again, knocking him down, then struck him approximately 10-15 more times with the Club. Id. at 6. Reynolds then informed Brent that Sanchez was "still making noise. We got to kill him. He not dead yet." Id. Finally, Reynolds jumped on Sanchez approximately six times. Id. at 8. Reynolds and Brent then departed. Id. at 9.

A Chicago police evidence technician testified that he recovered a baseball bat and other incriminating evidence at the scene. Id. at 5. The evidence technician also testified that when the police found Reynolds' car, it contained a blue Club. Id. A Cook County forensic pathologist testified that Sanchez died as a result of blunt force trauma. Id. Among his injuries, Sanchez suffered a broken neck, facial fractures, bleeding from the brain, and numerous abrasions on his upper and lower body. Id.

## B. Procedural History

### 1. *Proceedings before the State Court*

Authorities charged Reynolds and Brent by way of indictment with first-degree murder. Following simultaneous jury trials in the Circuit Court of Cook County, both defendants were found guilty as charged. Reynolds, 00-3478, slip op. at 1. The Circuit Court sentenced Reynolds to 56 years imprisonment. Id. Brent received a 25 year sentence. Id.

On direct appeal, Reynolds argued that the trial court erred by refusing to instruct the jury on: (1) self-defense; (2) second-degree murder based on an unreasonable belief in self-defense; and (3) second-degree murder based on serious provocation from physical injury or

assault. Opening Br. and Argument for Def.-Appellant, at 2. In a consolidated opinion, the Illinois Appellate Court affirmed Reynolds' and Brent's convictions. Reynolds, 00-3478, at 31. Reynolds raised the same three issues in his pro se Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court. Pet. for Leave to Appeal, at 2. The Illinois Supreme Court denied Reynolds' PLA on October 7, 2003. People v. Reynolds, 803 N.E.2d 486 (Ill. 2003).

On November 10, 2003, Reynolds filed a pro se postconviction petition in the Circuit Court of Cook County. He argued that the Circuit Court's refusal to provide jury instructions on self-defense and second-degree murder violated both the Illinois and United States Constitutions. Pet. for Post Conviction Relief, at 2. The Circuit Court denied the Petition. People v. Reynolds, 98-31249-01 (Ill. Cir. Ct. Jan. 26, 2004). The Illinois Appellate Court affirmed. People v. Reynolds, 04-720 (Ill. App. Ct. Apr. 15, 2005). The Illinois Supreme Court denied Reynolds' PLA on September 29, 2005. People v. Reynolds, 839 N.E.2d 1034 (Ill. 2005).

## 2. *Proceedings before the District Court*

Reynolds filed his original § 2254 Petition in the District Court on August 29, 2006. He raised eight separate issues, none of which he raised in his state court proceedings. The Court therefore issued a rule to show cause as to why the Petition should not be dismissed as procedurally defaulted. See 28 U.S.C. § 2254(b)(1) (requiring that habeas petitioners exhaust the remedies available in state court prior to pursuing federal habeas relief); Johnson v. Pollard, 559 F.3d 746, 751 (7th Cir. 2009) (in order to satisfy § 2254's exhaustion requirement, habeas petitioners must "fairly presen[t] federal claims to state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.").

4

Reynolds filed the instant Amended § 2254 Petition on October 23, 2006. He raises the same three issues he raised on direct appeal. Am. Pet. for Writ of Habeas Corpus, at 19-20. These issues are: (1) the trial court's refusal to instruct the jury on self-defense; (2) the trial court's refusal to instruct the jury on second-degree murder based on unreasonable belief in self-defense; and (3) the trial court's refusal to instruct the jury on second-degree murder based on serious provocation from physical injury or assault. Id. Reynolds argues that the trial court's refusal to give these instructions violated his rights under the Fifth, Sixth, and Fourteenth Amendments. Id. The Amended Petition is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Reynolds' Petition is governed by 28 U.S.C. § 2254(d), which sets a high hurdle for habeas relief. This statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either incorrectly laid out governing United States Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." Sutherland v. Gaetz, 581 F.3d 614, 616 (7th Cir. 2009)

5

(citing Calloway v. Montgomery, 512 F.3d 940, 943 (7th Cir. 2008)). A state court's decision is an "unreasonable application" of clearly established Supreme Court law when:

> a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply.

Id. (citing Muth v. Frank, 412 F.3d 808, 814 (7th Cir. 2005)). In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.").

## B. Reynolds' Claims under § 2254

### 1. Self-Defense

Reynolds first asserts that the trial court's refusal to instruct the jury on self-defense was a violation of his Fifth, Sixth, and Fourteenth Amendment rights. In support of this assertion, Reynolds argues that the State's witnesses presented conflicting testimony, and that "he was attacked [by Sanchez] and he defended himself." Am. Pet., at 19.

In addressing the issue of self-defense, the Illinois Appellate Court first explained that under Illinois law, a defendant must demonstrate six elements in order to raise such a claim: (1) the victim directed a threat of force towards the defendant; (2) the defendant was not the aggressor; (3) an imminent danger of harm to the defendant existed; (4) the force threatened against the defendant was unlawful; (5) the defendant actually believed that the threat existed and

6

that the amount of force he or she used to avoid the threat was necessary; and (6) the defendant reasonably held these beliefs. Reynolds, 00-3478, at 15 (citing People v. Dunlap, 734 N.E.2d 973, 981 (Ill. App. Ct. 2000)). The Appellate Court then recounted trial testimony indicating that: Reynolds initiated the confrontation by pursuing the Blazer; Reynolds stated that if he caught the Blazer's occupants he would "beat their ass"; Reynolds was aware Sanchez was unarmed; Reynolds' own testimony indicated that he was not afraid of Sanchez; and that witnesses testified that Reynolds repeatedly struck Sanchez while Sanchez was motionless on the ground. Reynolds, 00-3478, at 15-16. The Appellate Court determined that, pursuant to the six Dunlap factors, this evidence did not support a self-defense instruction. Id. at 17.

In Matthews v. United States, the United States Supreme Court explained that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." 485 U.S. 58, 63 (1988). In this case, the Illinois Appellate Court determined that there was no evidence that would support a jury instruction on self-defense. Reynolds, 00-3478, at 15-17. This conclusion was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1); Armstrong v. Bertrand, 336 F.3d 620, 626 (7th Cir. 2003) (finding that a Wisconsin court's determination that a defendant was not entitled to a self-defense instruction did not violate Supreme Court precedent). Reynolds' first claim under § 2254 therefore fails.

## 2. *Second-Degree Murder*

Reynolds' second and third claims are that the trial court's refusal to instruct the jury on second-degree murder violated his Fifth, Sixth, and Fourteenth Amendment rights. In support of

this assertion, Reynolds argues in his second claim that the trial court should have given the jury this instruction because he unreasonably believed he was acting in self-defense. Am. Pet., at 19. In his third claim, he argues that the trial court should have given this instruction because Sanchez provoked him. Id. at 19-20.

In Illinois, an individual commits second-degree murder when he or she commits first-degree murder and acted either under "serious provocation," or with an unreasonable belief that Illinois' statutory principles of self-defense or defense of others justified his or her actions. 720 ILL. COMP. STAT. 5/9-2. Second-degree murder is a "lesser mitigated offense" to first-degree murder in Illinois. People v. Parker, 861 N.E.2d 936, 941 (Ill. 2006). This means that if the prosecution proves the elements of first-degree murder, the defendant may seek to present evidence that mitigates the charge to second-degree murder. Id.

In noncapital cases like this one, the Seventh Circuit holds that there is no "clearly established Supreme Court precedent" that would establish a defendant's right to a jury instruction on a lesser offense. Calloway v. Montgomery, 512 F.3d 940, 944 (7th Cir. 2008) (quoting Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of such [lesser] instructions in a noncapital case.")). The trial court's refusal to give the jury instructions on the lesser offense of second-degree murder thus could not have violated "clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254 (d)(1). Reynolds' second and third claims under § 2254 therefore fail.

## III. CONCLUSION

For the foregoing reasons, Reynolds' Amended Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254 is denied. The Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Date: Jan. 28, 2011